## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
#### (Eastern Division)

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **LINDSAY LAMPASONA, LLC,** | **Case No. 11-19747-JNF** |
| **Debtor.** | |

## DEBTOR'S MOTION (A) TO AUTHORIZE DEBTOR TO EFFECTUATE PURCHASE AND SALE AGREEMENT WITH RYKOR CONCRETE & CIVIL INC.; (B) TO AUTHORIZE SALE OF ASSETS BY PRIVATE SALE FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS; (C) TO AUTHORIZE THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS, AND (D) FOR RELATED RELIEF

Lindsay Lampasona, LLC (the "Debtor"), the debtor and debtor-in-possession in the

above captioned case, hereby moves this Court, pursuant to Sections 105, 363 and 365 of the

United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq.(the "Bankruptcy Code"), Rules 2002,

6004, 6006 and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and Rules 2002-1, 2002-5, 6004-1, 6006-1 and 9013-3 of the Local Bankruptcy Rules of the

United States Bankruptcy Court of the District of Massachusetts (the "Local Rules"), for the

entry of an order (a) authorizing the Debtor to effectuate the asset purchase agreement (the

"APA") with RYKOR Concrete & Civil Inc. ("Rykor"), (b) authorizing the sale of substantially

all of the Debtor's tangible assets and the right to complete an outstanding contract as further

described below (collectively the "Assets"), by private sale free and clear of all liens, claims and

interests, (c) authorizing the Debtor to assume and assign certain executory contracts in

conjunction with the proposed sale, and (d) for related relief.[1]  Except for those liabilities of the

Debtor assumed by Rykor, all liens, claims and interests shall attach to the proceeds from the

---

[1] Capitalized terms not otherwise defined in this motion shall have the meanings ascribed to them in the APA.

1

proposed sale to the same extent, priority and validity that existed on the Petition Date (as

defined below). The Debtor has filed a separate motion requesting approval of bid procedures

for the sale of the Assets.

In further support of this Motion, the Debtor avers as follows:

## I.   JURISDICTION AND VENUE

1.   This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334 and

157.

2.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

3.   The statutory predicates for the relief sought in this motion are Sections 105, 363

and 365 of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 2002, 6004, 6006 and

9013 and Local Rules 2002-1, 2002-5, 6004-1, 6006-1 and 9013-3.

## II.   BACKGROUND

4.   On October 14, 2011 (the "Petition Date"), the Debtor filed a voluntary petition

under Chapter 11 of Title 11 of the United States Code.

5.   The Debtor continues to operate as a debtor-in-possession pursuant to Sections

1107 and 1108 of the Bankruptcy Code and no trustee or committee has been appointed in this

case.

### A.   The Debtor and Its Business.

6.   Formed in 2008, the Debtor is a Delaware limited liability company whose

members are J.W. Lindsay Enterprises, Ltd. ("JWL") and Lampasona Concrete, Corporation

("LCC"). Upon the Debtor's formation, LCC contributed substantially all of its tangible and

intangible assets to the Debtor, and JWL made a capital contribution to the Debtor. The Debtor

2

is in the business of constructing concrete foundations and walls. Prior to the Petition Date, the

Debtor worked on projects throughout New England and the Mid-Atlantic States.

7.      The Debtor specializes in tilt-up concrete wall systems and formwork/flatwork

foundations and floors, including laser screed floors and F number specified flat and superflat

concrete floors. The Debtor has been involved in the construction of multi-storey offices,

warehouses, commercial and retail locations, automotive dealerships, educational facilities,

manufacturing plants, religious institutions and residential buildings.

8.      The global economic downturn that began in 2008 resulted in a general slowdown

in the construction industry and in the Debtor's business. The Debtor required loans from one of

its principals, JWL to support its operations through the end of 2008. Notwithstanding the

continued economic downturn, the Debtor managed to achieve a small profit in 2009. In 2010,

the continued economic downturn caused a further decline in the pricing of jobs in the Debtor's

industry, and the Debtor's operations suffered further. Additional loans from JWL were required

to maintain the Debtor's operations.

9.      In 2011, when it became apparent that the Debtor could no longer sustain

profitable operations, the Debtor began exploring a sale of its operations as a going concern. The

Debtor worked to finish all of its construction projects. Only one construction project, the MPO

Project, has any material work left to perform. The Debtor experienced difficulty locating a

buyer because it did not have a sufficient backlog of work to profitably sustain its ongoing

operations. The Debtor ultimately received an offer, from Rykor, for its tangible assets and the

right to complete a certain MPO construction project agreement (the "MPO Contract") in

Merrimack, New Hampshire whereby the Debtor is to provide certain construction services in

connection with the MPO construction project. Rykor was able to make the offer because it has

3

sufficient existing concrete work to operate without purchasing a backlog of jobs from the Debtor. The sale to Rykor will permit the Debtor to preserve at least approximately forty (40) jobs in the Commonwealth of Massachusetts, sell its tangible assets in an orderly fashion for a fair market price, and collect its accounts receivable in an orderly manner. The alternative is a forced liquidation, which would result in a lower price for the Debtor's tangible assets and a longer sale period, and the loss of most, if not all, of its accounts receivable due to backcharges and setoff and recoupment claims from general contractors.

**B.     The Debtor's Assets.**

10.     The Debtor's tangible assets consist of used vehicles, equipment and forms used in its concrete business, including approximately: (a) thirty (30) used vehicles, most of which have model years between 2004 and 2006, (b) approximately ninety (90) pieces of used construction equipment, such as power trowels, screeds, saws and grinders, most of which were purchased between 2002 and 2005, (c) various materials used in the concrete business and/or in the maintenance of the Debtor's equipment, and (d) used office furniture and equipment that was purchased in 2005. The fair market value of the Debtor's tangible assets is approximately $450,000.

11.     The Debtor's intangible assets consist of accounts receivable of approximately $1,650,000, of which approximately $280,000 relates to projects where the amounts owed to the Debtor's subcontractors exceed the amount owed to the Debtor and is, therefore, not likely collectible. Of the $1,370,000 in accounts receivable that the Debtor believes is collectible, approximately $750,000 relates to the MPO Contract. The collectability of the receivable arising from the MPO Contract is likely to materially decrease as a result of backcharges and recoupment claims unless the MPO Project is completed.

12.     The $1,370,000 in receivables that the Debtor believes is collectible arise from the sixteen (16) Profitable Projects.  As of the Petition Date, the Debtor owed an aggregate of approximately $767,000 to Subcontractors on the Profitable Projects.  Other than causes of action arising under the Bankruptcy Code and potential contribution claims, the Debtor does not have any other material causes of action.

### C.     The Debtor's Liabilities

13.     The Debtor owes the Bank of Canton approximately $1,500,000 arising from various loans to the Debtor, including multiple term loans and a revolving line of credit with the Debtor's predecessor, the liability for which was assumed by the Debtor.  The Bank of Canton asserts a lien on substantially all of the Debtor's assets arising, among other things, from a security agreement dated April 3, 2009.  The Debtor's obligations to the Bank of Canton are guaranteed by various affiliates and insiders, including LCC, JWL, Lindsay Construction Services, Ltd., the Debtor's managers and Vindome, LLC, an affiliate that owns the real estate from which the Debtor operates.

14.     Each of the contracts for the Profitable Projects provides that the counter-party to the contract may withhold payment of amounts due to the Debtor if the Debtor does not pay its subcontractors and suppliers.  The counter-parties therefore hold rights of recoupment and/or setoff.  Some courts have treated rights of setoff as secured claims under the Bankruptcy Code to the extent of the right of setoff.  *See In re Gibson Group, Inc.*, 126 B.R. 759 (Bankr. S.D.Ohio 1991).

15.     JWL and another affiliate, Lindsay Construction Services, Ltd. ("JCS"), loaned the Debtor approximately $1,200,000 between 2008 and 2011.  Both JWL and JCS assert liens

5

against substantially all of the Debtor's assets for the amounts loaned. JWL and JCS have signed

agreements subordinating any of their liens to the liens asserted by the Bank of Canton.

16.    As of the Petition Date, the Debtor owed non-priority unsecured creditors

approximately $2,502,000, inclusive of the approximately $767,000 owed to Subcontractors on

the Profitable Projects.

### III.    THE PROPOSED SALE[2]

17.    Subject to the approval of the United States Bankruptcy Court for the District of

Massachusetts (the "Court"), the Debtor entered into the APA with Rykor. A copy of the APA is

attached as Exhibit A.

### A.    The Purchase Price And The Assets to be Purchased.

18.    The purchase price for the Assets is $448,000 (the "Purchase Price"). Rykor has

provided a deposit in the amount of $10,000, which is currently being held by Debtor's counsel.

Rykor is also assuming certain designated liabilities and obligations arising under assumed

contracts (the "Assumed Liabilities"). Rykor has made a good faith deposit of $10,000. The

APA provides that Rykor is entitled to a termination fee of $22,400 plus any amounts that Rykor

has paid in connection with post-petition in connection with the MPO contract (collectively the

"Termination Fee"). The Debtor estimates that the amounts paid by Rykor in connection with

the MPO Contract will total approximately $350,000 for one month's expenses. The

Termination Fee is subject to Court approval and payable in the event a competing transaction is

consummated resulting in the sale of the Assets to a third party.[3]

19.    The Assets include the following:

---

[2]  The descriptions of the proposed sale and the APA, are not meant to be substitutes for the APA, which contain additional terms and conditions. In the event of a conflict between this motion and the APA, the APA shall control.

[3]  The Termination Fee is described more fully in the Motion to Approve Bid Procedures, filed contemporaneously with this motion.

a.  Vehicles, inventory, fixtures, equipment, tools, furniture, office furnishings and office equipment, including those assets listed on Schedule 1.1(a) to the APA;

b.  Rights of the Debtor under equipment leases, sales orders and purchase orders listed on Schedule 1.1(b) to the APA

**B.   Liabilities and Contracts to be Assumed and Assigned**

20.   In connection with the purchase of the Assets, Rykor has agreed to assume certain

of the Debtor's liabilities and obligations, including the following (together with the MPO

Contract, the "Assumed Contracts"):

a.  Payment obligations under equipment leases, sales orders and purchase orders listed on Schedule 1.1(b) to the APA;

b.  Retail installment sale contract regarding a 2009 GMC Sierra (VIN: 1GDHC49K09E142477);

c.  Retail installment sale contract regarding a 2005 Buick Rendezvous (VIN: 3G5DA03E45S513166);

d.  Finance Agreement regarding 2004 Ford F750 (VIN: 3FRXF75344V609438);

e.  Master Loan and Security Agreement dated March 7, 2008 by and between Lampasona Concrete Corporation and LEAF Funding, Inc.;

f.  Commercial Finance Agreement regarding Demo Somero Power Rake; and

g.  Retail Installment Sale Contract regarding 2007 GMC P/U (VIN: 1GTHK23DO7F166808.

21.   At least seven (7) days prior to any hearing on this Motion, Rykor may, by notice

to the Debtor and without any additional consideration, designate additional contracts,

agreements, leases and/or licenses to be assumed and assigned or to designate executory

contracts and agreement which will not be assumed and assigned notwithstanding their prior

inclusion in Schedule 1.1(b) and Schedule 1.2 or prior designation by Rykor. The Debtor does not believe that any other contracts will be assumed and assigned.

22.     Except for the obligations under 11 U.S.C. §365, the assumption and assignment of the Assumed Liabilities shall be free and clear of all mortgages, pledges, liens, security interest, lease, charge, encumbrance, claim or joint ownership.

23.     In addition to the contracts identified above, the Debtor seeks to assume and assign to Rykor the MPO Contract. The MPO Contract is the one remaining construction contract of the Debtor that was not substantially completed as of the Petition Date.

24.     The Debtor does not believe that any cure amounts will be owed with respect to the Assumed Contracts, including the MPO Contract.

C.     **Conditions to Closing.**

25.     The consummation of the proposed sale to Rykor is conditioned, among other things, on the entry of an order of the Bankruptcy Court: (i) approving the proposed sale on substantially the terms and conditions set forth in the APA; (ii) containing specific findings that Rykor is a good faith purchaser for the purposes of 11 U.S.C. §363(n); (iii) providing that the sale of assets to Rykor shall be free and clear of all liens; providing that Rykor shall have no successor or vicarious liabilities; and (iv) providing that pursuant to Federal Rules of Bankruptcy Procedure 6006(d) and 6004(g) that the order will not be stayed but will be effective immediately.

26.     The APA further requires the Debtor to file a motion for approval of certain bidding procedures; and the Debtor has contemporaneously filed a motion for approval bidding procedures for the sale.

8

## IV.    REQUEST FOR RELIEF

### A.    Authority to Sell Assets.

27.    Pursuant to Section 363(f) of the Bankruptcy Code, the Debtor requests the authority to sell the Assets free and clear of all liens, claims and interests.  Except for the Assumed Contracts, all liens and claims against or interests in the Assets will attach to the proceeds from the sale to the same extent, priority and validity that existed on the Petition Date.

28.    The Bankruptcy Code requires court approval for the use, sale or lease of a Debtor's assets outside the ordinary course of business.  *See* 11 U.S.C. § 363.  In pertinent part, Section 363(b)(1) provides that a "trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1).

29.    Courts have approved a sale of a debtor's assets if the proposed transaction represents a reasonable business judgment on the part of the debtor.  *See In re Martin*, 91 F.3d 389, 396 (3d Cir. 1996); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Thomas McKinnon Securities, Inc.*, 120 B.R 301 (Bankr. S.D.N.Y. 1990); *In re Coastal Indus., Inc.*, 63 B.R 361,367 (Bankr. N.D. Ohio 1986); *In re Baldwin United Corp.*, 43 B.R 888 (Bankr. S.D. Ohio 1984).

30.    As a result of the financial stress resulting from the global downturn and general slowdown in the construction industry, the Debtor concluded that it could not continue its operations.  In order to preserve the value of its business as a going concern, it is necessary for the Debtor to conduct the proposed sale.  The going concern sale of the Debtor's business will also provide creditors an ongoing source of new business and preserve the jobs of the Debtor's employees.

31.     Absent the sale of the Assets as a going concern, the Debtor would likely be forced to liquidate its assets. Such a liquidation would return a fraction of the value of the assets that would be received in a going concern sale of the Assets. Moreover, the liquidation would result in the loss of the jobs associated with the Assets as well as the loss of business for vendors and customers.

32.     The Debtor has concluded, in its business judgment, that the proposed sale of the Assets to Rykor will result in the best value for the Assets. The sale of the Assets is therefore in the best interest of the Estate and its creditors, and approval of the Sale is warranted. *See In re Martin*, 91 F.3d 389, 396; *In re Lionel Corp.*, 722 F.2d 1063, 1070.

33.     Grounds exist to sell the Assets because the holders of interests in the Assets either consent to the sale or "may be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." *See* 11 U.S.C. § 363(f)(5).

34.     The Debtor requests that the Court waive the ten (10) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(g).

B.      **Authority to Assume/Reject Executory Contracts.**

35.     Subject to court approval, Section 365(a) of the Bankruptcy Code authorizes a trustee to assume and assign or reject an executory contract or unexpired lease. *See* 11 U.S.C. § 365(a). The standard for determining whether an executory contract or unexpired lease should be assumed or rejected is the "business judgment" test. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1098 (2d Cir. 1993); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business judgment test as "traditional").

36.     Upon finding that a trustee has exercised sound business judgment in determining that the assumption or rejection is in the best interests of its estate, the court should approve the

10

assumption or rejection under Section 365(a) of the Bankruptcy Code. *See, e.g., In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re TS Indus., Inc.*, 117 B.R. 682, 685 (Bankr. D. Utah 1990); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990).

37.    The assumption and assignment of the Assumed Contracts is necessary for the consummation of the APA. The Assumed Contracts are necessary to permit Rykor to operate the Assets. The Debtor is requesting the authority to assume the Assumed Contracts only in the event that the sale of the Assets closes.

38.    As is described above, the consummation of the sale contemplated by the APA is in the best interest of the Debtor, its creditors and parties in interest. Because the assumption and assignment of the Assumed Contracts is necessary for the consummation of the APA, the Debtor has determined, in its business judgment, that such assumption and assignment is in the best interest of the Debtor, its creditors and parties in interest.

39.    The assumption and assignment of the Assumed Contracts is therefore warranted pursuant to Section 365(a) of the Bankruptcy Code. *See In re Orion Pictures Corp.*, 4 F.3d at 1098.

## V.    NOTICE

40.    The Debtor has served this motion on the Office of the United States Trustee, the counterparties to the Assumed Contracts, all of the Debtor's secured creditors, the top 20 unsecured creditors and all parties having filed a notice of appearance in the above captioned case.

41.    The Debtor submits that such service is appropriate given the nature of the relief requested in this motion.

WHEREFORE, the Debtor respectfully requests that the Court enter an order: (a) approving this motion, (b) authorizing the sale of the Assets as contemplated by the APA, (c) authorizing the Debtor to take the steps necessary to the effectuate the APA, (d) authorizing the Debtor to assume and assign the executory contracts contemplated by the APA, (e) waiving the stay provisions of Federal Rule of Bankruptcy Procedure 6004(g), and (f) granting such other relief as this Court deems proper.

Respectfully submitted,

LINDSAY LAMPASONA, LLC,

By its proposed counsel,

/s/ Natalie B. Sawyer
D. Ethan Jeffery (BBO #631941)
Natalie B. Sawyer (BBO #660072)
MURPHY & KING  P.C.
One Beacon Street, 21st Floor
Boston, MA  02108-3107
Telephone:  (617) 423-0400
Facsimile:  (617) 423-0498
dej@murphyking.com

Dated:  October 19, 2011

609207