UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>**LINDSAY LAMPASONA, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 11-19747-JNF |

**MOTION BY DEBTOR FOR APPROVAL OF BIDDING
PROCEDURES AND TERMINATION FEE PROVISION
IN CONNECTION WITH PROPOSED PRIVATE SALE OF
ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS**
(*Expedited Determination Requested*)

Lindsay Lampasona, LLC (the "Debtor"), the debtor and debtor-in-possession in the above captioned case, requests the approval of sales and bidding procedures (the "Bid Procedures") and termination fee provisions in conjunction with the *Debtor's Motion (A) to Authorize Debtor to Effectuate Purchase and Sale Agreement With Rykor Concrete & Civil Inc.; (B) to Authorize Sale of Assets By Private Sale Free and Clear of Liens, Claims and Interests; (C) to Authorize the Assumption and Assignment of Executory Contracts, and (D) For Related Relief* (the "Sale Motion"). The Sale Motion seeks approval of an asset purchase agreement (the "Rykor APA") that contemplates the sale (the "Sale") of the Debtor's tangible assets and the assumption and assignment of one of its contracts to Rykor Concrete & Civil, Inc. ("Rykor"). In conjunction with the proposed sale, the Debtor requests the approval of the bid procedures and termination fee provisions provided for in the Rykor APA[1] and as set forth below.

In further support of this motion, the Debtor avers as follows:

---

[1] This motion contains summaries of various terms of the Rykor APA but is not meant to be a substitute for the Rykor APA which contains additional terms and conditions. In the event of a conflict between this motion and the Rykor APA, the Rykor APA shall control.

## JURISDICTION

1.      This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested in this motion include Sections 105(a), 361, 362, and 363 of the Bankruptcy Code, Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, and MLBR 6004-1 and 6006-1.

## BACKGROUND

3.      On October 14, 2011 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code.

4.      The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code and no trustee or committee has been appointed as of the date of this motion.

5.      Formed in 2008, the Debtor is a Delaware limited liability company whose members are J.W. Lindsay Enterprises, Ltd. ("JWL") and Lampasona Concrete, Corporation ("LCC"). Upon the Debtor's formation, LCC contributed substantially all of its tangible and intangible assets to the Debtor, and JWL made a capital contribution to the Debtor. The Debtor is in the business of constructing concrete foundations and walls.

6.      The Debtor specializes in tilt-up concrete wall systems and formwork/flatwork foundations and floors, including laser screed floors and F number specified flat and superflat concrete floors. The Debtor has been involved in the construction of multi-storey offices, warehouses, commercial and retail locations, automotive dealerships, educational facilities, manufacturing plants, religious institutions and residential buildings.

7.  The global economic downturn that began in 2008 resulted in a general slowdown in the construction industry and in the Debtor's business. Notwithstanding the continued economic downturn, the Debtor managed to achieve a small profit in 2009. In 2010, the continued economic downturn caused a further decline in the pricing of jobs in the Debtor's industry, and the Debtor's operations suffered further.

8.  In 2011, when it became apparent that the Debtor could no longer sustain profitable operations, the Debtor began exploring a sale of its operations as a going concern. The Debtor worked to finish all of its construction projects. The Debtor experienced difficulty locating a buyer because it did not have a sufficient backlog of work to profitably sustain its ongoing operations. The Debtor ultimately received an offer, from Rykor, for its tangible assets and the right to complete the contract on the Debtor's project in Merrimack, New Hampshire (the "the MPO Contract", and together with the Debtor's tangible assets the "Assets").

9.  In conjunction with its proposed purchase of the Assets and subject to the approval of the Court, Rykor has agreed to advance, on an unsecured basis, amounts necessary to continue work under the MPO Contract. Pursuant to the Rykor APA, in the event that Rykor is not the successful bidder for the Assets, Rykor is entitled to be repaid such advances, which the Debtor estimates will total approximately $350,000 for one month's expenses, from the proceeds of the sale of the Assets (the "MPO Repayment Amount").

10. The Sale will permit the Debtor to preserve at least approximately forty (40) jobs in the Commonwealth of Massachusetts, sell its tangible assets in an orderly fashion for a fair market price, and collect its accounts receivable in an orderly manner. The alternative is a forced liquidation, which would result in a lower price for the Debtor's tangible assets and a longer sale

period, and the loss of most, if not all, of its accounts receivable due to backcharges and setoff and recoupment claims from general contractors.

### RELIEF REQUESTED

**A.     Bid Procedures.**

11.    The Debtor requests that the Court approve the following bidding procedures (the "Bid Procedures") for use in the Sale:

    a.   Any competing bid, offer, plan of reorganization or other arrangement shall be deemed to qualify as a competing bid (a "Competing Bid") only if made upon terms and provisions substantially similar to those set forth in this Agreement and in respect of the sale and purchase of substantially all of the Assets and assumption of the Assumed Liabilities and for an aggregate purchase price equal to the sum of the Purchase Price, the Termination Fee and $2,500.00. Seller shall provide an estimate of the Termination Fee to any interested party for the purpose of submitting a Competing Bid.

    b.   Any competing bidder pursuant to section (a) must deliver a deposit to Seller in an amount equal to $10,000.00 (the "Deposit") at the time of submission of such bid and satisfy Seller of the bidder's ability to consummate the transaction.

    c.   An Auction for the Assets shall be held only if there is a Competing Bid, and the Auction, if necessary, shall be conducted by the Bankruptcy Court at the time of the hearing on the Sale Approval Order. The Bid Procedures shall provide that if there is no Competing Bid, then the Buyer and Seller shall proceed to seek approval of the Sale Approval Order.

    d.   Only persons that have submitted a timely qualified Competing Bid may participate in any Auction for the Assets. Notwithstanding this subsection of the Bid Procedures, Buyer may participate in any Auction.

    e.   Bidding at any Auction for the Assets shall be conducted as an open bidding process, with any incremental bid made subsequent to the initial overbid to be at least $10,000.00 greater than the most recent bid.

    f.   At any Auction for the Assets: (1) Buyer shall be entitled to improve its offer, and (2) Buyer shall, with respect to any bid at the Auction, be entitled to waive the Termination Fee and the amount waived shall be added to Buyer's bid.

12.    In the event the party who submits the highest and best offer for the Assets fails to close on the sale through no fault of the Debtor, the Debtor requests that the order approving the

4

Bid Procedures (the "Bid Procedures Order") provide that such party's Deposit be forfeited to the Debtor.

13. If the party submitting the highest and best offer for the Assets fails to close on the sale of the Assets, the Debtor requests that the Bid Procedures Order provide the Debtor with the authority to sell the Assets to the party submitting the second highest or best offer, as determined at the hearing on the Sale.

### B. Termination Fee Provisions.

14. Subject to the Court's approval, the Rykor APA provides Rykor with a termination fee ("Termination Fee") in that Rykor is not the successful bidder for the Assets (a "Competing Transaction"). The Termination Fee shall equal $22,400.00 plus the MPO Repayment Amount. The Rykor APA also provides that that any Termination Fee shall: (a) be paid only from the proceeds and at the Closing of the Competing Transaction, (b) be treated as an allowed administrative expense with priority over all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and (c) be free and clear of (x) any and all Liens and (y) any interest, pledge, lien, security interest, judgment, demand, encumbrance restriction or charge of the Debtor or the Debtor's estate of any kind or nature (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated).

15. The advances by Rykor for the MPO Contract will permit the uninterrupted continuation of the work under the MPO Contract, which in turn preserves the Debtor's operations and the value of its existing receivables, including the approximately $750,000 receivable under the MPO Contract. In the event that Rykor is not the successful bidder for the

Assets, it is entitled to be repaid the MPO Repayment Amount as a cost of preserving the Debtor's assets.

16. The Termination Fee is reasonable given the size of the transaction contemplated by the Rykor APA and Rykor's advances.

### THE BID PROCEDURES AND TERMINATION FEE PROVISIONS SHOULD BE APPROVED

17. Good and sufficient cause exists to approve the proposed Bid Procedures and the Termination Fee.

18. The Bid Procedures and the Termination Fee are the product of arm's length negotiation between the Debtor and Rykor. The Bid Procedures and the Termination Fee Provisions will assist in administering an orderly sale process and provide reasonable and ordinary protection to Rykor.

19. The Bid Procedures are the usual and ordinary bidding procedures for sales in this district.

20. In *In re O'Brien Environmental Energy, Inc.*, the Third Circuit held that termination fees should be allowed where such "fees were actually necessary to preserve the value of the estate." *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999).

21. Rykor is unwilling to act as the stalking-horse bidder without the Termination Fee. By having Rykor as a stalking-horse bidder, much of the due diligence, contract negotiation and other work necessary to submit a bid for the Assets will have been completed. This will shorten the time and cost required for prospective bidders to submit a Competing Bid and will therefore promote such bids. The sale of the Assets without a stalking-horse bidder would be

more time consuming, more expensive and would likely lead to fewer competitive bids. The approval of the Rykor Termination Fee will benefit the Debtor's bankruptcy estate.

### NOTICE

22. Copies of this motion have been served upon the United States Trustee, all secured creditors, the Debtor's twenty (20) largest unsecured creditors, the counter-party to the MPO Contract, and all parties who have file a notice of appearance and request for notice. The Debtor requests that such notice be deemed sufficient and appropriate notice.

WHEREFORE, the Debtor requests that the Court enter an Order, substantially in the form attached as Exhibit A: (a) approving this motion, (b) approving the Bid Procedures, (c) approving the Termination Fee in accordance with the Rykor APA, (d) establishing deadlines for the submission of counter-offers and the filing of objections to the Sale, (e) setting a hearing on the Rykor Sale Motion, and (f) granting it such other relief as is just and proper.

Respectfully submitted,

LINDSAY LAMPASONA, LLC,

By its proposed counsel,

/s/ Natalie B. Sawyer
D. Ethan Jeffery (BBO #631941)
Natalie B. Sawyer (BBO #660072)
MURPHY & KING P.C.
One Beacon Street, 21st Floor
Boston, MA 02108-3107
Telephone: (617) 423-0400
Facsimile: (617) 423-0498
dej@murphyking.com

Dated: October 19, 2011

609232