UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br>LINDSAY LAMPASONA, LLC,<br>　　　　　Debtor. | Case No. 11-19747 (JNF)<br><br>Chapter 11 |

**OBJECTION OF THE BANK OF CANTON TO MOTION BY
DEBTOR FOR APPROVAL OF BIDDING PROCEDURES AND TERMINATION
FEE PROVISION IN CONNECTION WITH PROPOSED PRIVATE SALE OF
ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS**

The Bank of Canton (the "**Bank**"), by and through its undersigned attorneys, hereby objects to the Motion by Debtor for Approval of Bidding Procedures and Termination Fee Provision in Connection with Proposed Private Sale of Assets Free and Clear of Liens, Claims and Interests [Docket No. 18] (the "**Bid Procedures Motion**") filed by the debtor, Lindsay Lampasona, LLC (the "**Debtor**"). The Bank submits that consideration of the Bid Procedures Motion is premature, wasteful, or altogether improper at this time, as the Bank has been informed by the Debtor that the terms of the underlying proposed sale have changed and are no longer as described in the Bid Procedures Motion or in the related Debtor's Motion (A) to Authorize Debtor to Effectuate Purchase and Sale Agreement with Rykor Concrete & Civil Inc.; (B) to Authorize Sale of Assets by Private Sale Free and Clear of Liens, Claims and Interests; (C) to Authorize the Assumption and Assignment of Executory Contracts, and (D) for Related Relief [Docket No. 17] (the "**Sale Motion**"). Because of this deficiency, the Bank asserts that the Bid Procedures Motion and Sale Motion (together, the "**Sale Pleadings**") should not be approved because (i) the proposed sale of substantially all of the Debtor's assets circumvents the Chapter 11 plan process; (ii) the bid procedures are for a sale that is no longer being proposed and, in any event, require considerable modification; and (iii) the Sale Pleadings seek to

improperly provide the Debtor with priming financing in violation of the Bankruptcy Code and the local rules of this Court.

Until the terms of the sale are known by the parties and have been adequately disclosed to this Court (*i.e.*, most fundamentally, items being sold and the purchase price), a determination of the appropriate bid procedures is a wasteful exercise: consideration of what should constitute a "competing bid" or evaluating the appropriateness of any termination/break-up fee is simply impractical at this time. The Bank makes this objection to the Bid Procedures Motion and reserves all rights to supplement or include further objections upon receiving adequate disclosure of the new terms of the proposed sale and any modifications to the proposed bid procedures.[1] In support of this Objection, the Bank states as follows:

## BACKGROUND

1. On or about October 14, 2011 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**").

2. Prior to the Petition Date, the Debtor entered into certain loan arrangements (as amended and in effect, collectively, the "**Loan Arrangements**") with the Bank in the aggregate original principal amount of $673,285.05. In addition, the Debtor is the unlimited guarantor of the indebtedness of one of its co-owners, Lampasona Concrete Corporation, to the Bank, which indebtedness exceeds $1,000,000.

---

[1] By Order dated November 2, 2011, the Court granted the Bank's assented-to motion to extend the deadline to object to the Sale Motion. The Bank reserves its right to object to the Sale Motion as set forth in that Order.

2

3. The Debtor's obligations to the Bank are secured by a certain Security Agreement dated April 9, 2009 granted by the Debtor to the Bank encumbering substantially all of the Debtor's personal property, including without limitation, equipment and receivables.

4. Certain defaults occurred under the Debtor's obligations to the Bank prior to the Petition Date as a result of, among other things, the Debtor's failure to make regularly scheduled payments as and when due. As a result of such defaults, the Bank made demand upon the Debtor for payment in full of all amounts owed to the Bank. The Debtor failed, neglected, and refused to pay all such amounts as and when due.

5. On or about October 19, 2011, the Debtor filed the Bid Procedures Motion and the Sale Motion seeking authority to sell substantially all of its assets to Rykor Concrete & Civil, Inc. ("**Rykor**").

## OBJECTION

### A. The Bid Procedures Motion and Related Sale Motion Improperly Circumvent the Plan Process

6. By the Bid Procedures Motion and Sale Motion, the Debtor attempts to circumvent the plan process by selling substantially all of the Debtor's assets pursuant to an incomplete agreement and without adequate disclosure. In an effort to expeditiously dispose of the Debtor's assets in a disorganized fashion, the Sale Pleadings effectively seek approval of a *sub rosa* plan. See, e.g., In re Continental Air Lines, Inc., 780 F.2d 1223, 1227 (5th Cir. 1986). In Continental Air Lines, the Fifth Circuit stated that the debtor should not be able "to short circuit the requirements of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with a proposed transaction . . . [A] debtor in Chapter 11 cannot use §363(b) to sidestep the protection creditors have when it comes time to confirm a plan of reorganization."

Id. As the First Circuit has recognized, an order "confirming a chapter 11 liquidation sale warrants especial bankruptcy court scrutiny" because such a sale is "the functional equivalent of an order confirming a conventional chapter 11 reorganization plan." Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.), 43 F.3d 714, 720 n.9 (1st Cir. 1994); see also In re Abbotts Dairies, 788 F.2d 143, 150 (3d Cir. 1986) (court scrutiny is required to guard against abuse of section 363(b)(1) as a means to circumvent the creditor protections of Chapter 11). Indeed, the local rules of this Court require that sale pleadings that contemplate that "all or substantially all of a chapter 11 debtor's assets are to be sold, [state] why the sale is proposed under 11 U.S.C. § 363 rather than through a chapter 11 pan and [include] a practical and abbreviated equivalent of the adequate information required in a disclosure statement to a chapter 11 plan." MLBR 6004-1(c)(F). The Bid Procedures Motion seeks to set in motion a sale process that would be the "functional equivalent" of a reorganization plan and therefore warrants the Court's higher scrutiny. Neither of the Sale Pleadings contains the information and disclosures necessary for parties, including the Bank, to evaluate the assets being sold, what remains with the estate, and whether the proposed sale price is fair. The Sale Pleadings do not demonstrate that the Debtor has made any effort to adequately appraise the value of the assets and makes no mention of any efforts by the Debtor to market the assets or any additional effort to market the assets to obtain higher bids than the initial bid by Rykor. The proposed sale seemingly is a quick sale to the Debtor's preferred buyer, perhaps to the detriment of creditors.

7. Furthermore, the Sale Pleadings fail to provide any disclosure of what will happen to the Debtor if the proposed sale were approved, whether it will continue to operate and the anticipated course of the Chapter 11 case. In sum, the Sale Pleadings subvert the creditor protections of Chapter 11 by proposing a sale process that is hastily put together and will

generate very little benefit, if any, to the estate. Accordingly, the Bid Procedures Motion should be denied.

### B. The Proposed Bid Procedures Should Not be Approved

8. The proposed bid procedures are tailored for a sale that is no longer being pursued and, therefore, should not be approved. The Debtor has informed the Bank that it intends to amend the Sale Motion, but as of the filing of this Objection still has not done so. Presumably, treatment of the MPO Contract and changes to the Rykor APA (both as defined in the Bid Procedures Motion) will be made. Because these are essential elements of the proposed sale, requiring potential bidders to submit "competing bids" on the "same terms and provisions" as set forth in the Bid Procedures Motion and the Sale Motion is certainly not appropriate. Consideration of the Bid Procedures Motion is premature or altogether improper at this time.

9. In addition to being unsuitable for the proposed sale, the bid procedures fail to address how the credit bid right of the Bank is to be dealt with. Section 363(k) of the Bankruptcy Code provides that in any sale under Section 363(b) the holder of a secured claim is entitled to credit bid at the sale and offset the allowed secured claim against the purchase price of the property. The Debtor has conceded that the Bank is a secured creditor in this case. However, the Bid Procedures Motion does not discuss credit bid rights at all or explain how they will be dealt with in the bidding process. The Bank submits that it should not be required to put down any deposit, make a competing higher offer, or pay any allowed termination fee. The Bank's right to credit bid without these restrictions allows for a necessary and crucial check against undervaluation and protects against the risk that any "winning" auction bid diverges from the actual value of the assets. See In re River Road Hotel Partners, LLC, 651 F.3d 642 (7th Cir. 2011).

10. In the event the Court determines that the consideration of the proposed bid procedures is appropriate at this juncture, certain of the proposed procedures included in the Bid Procedures Motion are objectionable and should be modified. To the extent a termination/break-up fee should be allowed at all, Rykor should not be entitled to "waive" such fee and have it "added" to any subsequent bid at the auction as the bid procedures propose. If Rykor chooses to improve its offer at auction, the termination/break-up fee should be forfeited. Additionally, all credit bid rights should be added to the bid procedures.

11. In all likelihood, other bid procedures will need to be modified once the amended sale terms are revealed. For example, the different treatment, or exclusion altogether of the MPO Contract and changes to the Rykor APA necessarily require a modification to the bid procedures, most notably in determining what constitutes a Competing Bid. As the Bank currently understands the sale prospect, the sale could possibly be a straight asset sale. As a result, if the sale is to go forward at all, there should just be a particular price paid in cash (or credit bid) for specific assets in "as is" condition, with the liens to follow the proceeds.

### C. The Termination/Break-Up Fee is an Unnecessary and Wasteful Expense

12. The facts of this case do not establish the necessity of a termination/break-up fee or additional expense reimbursement. Courts have applied different tests in connection with approving break-up fees: a business judgment test, an administrative expense test and a best interests test. See, generally, Sea Island Coastal Properties LLC, et al. v. Official Committee of Unsecured Creditors (In re Sea Island Co.), 2010 WL 4393269 at *2 (Bankr. S.D. Ga. Sept. 15, 2010) (discussing the three tests). No decisions in the First Circuit have dealt squarely with the standard by which break-up fees and expense reimbursements should be approved. However, whatever test is applied, the Debtor fails to satisfy the standard.

13. The Third Circuit is the only circuit court that has analyzed the standard, and it applies the standard found in Section 503(b) of the Bankruptcy Code for the approval of administrative expenses. Id. Under this test, break-up fees and expense reimbursements are permitted to the extent that they are beneficial to the estate and that they are necessary to preserve the value of the estate. See Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.), 181 F.3d 527, 532-33 (3rd Cir. 1999). As examples of potential benefits, the court notes that a break-up fee may be appropriate where the fee "promoted more competitive bidding", "induc[ed] a bid that otherwise would not have been made," or "induce[d] a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders can rely . . . [thereby] increasing the likelihood that the price at which the debtor is sold will reflect its true worth." Id. at 538.

14. Evaluating the appropriateness of any break-up fee when the sale terms are not known is impractical and proves that no such fee is warranted in this case. The Debtor is proposing a liquidation of substantially all of its assets, but is not presently capable of defining the scope of what is being sold. Accordingly, the termination/break-up fee is not required to enhance bidding, in fact, it can only serve to chill bidding. To the extent this Court were to approve of a termination/break-up fee in this case, the Bank submits that any such fee should be limited to Rykor's actual damages; anything else will be a windfall to Rykor that the Debtor cannot afford to pay. Here, although confusing and unclear to the Bank, by a fair reading of the Bid Procedures Motion, the termination fee proposed by the Debtor could equal $374,900 (the MPO Repayment Amount ($350,000), plus the termination fee ($22,400), plus a miscellaneous fee ($2,500)) for an asset sale of $448,000. The exact calculation of the fee proposed by the

Debtor and its impact on "competing bids" must be better understood before its appropriateness can be considered.

### D. The Debtor Fails to Disclose Debtor-In-Possession Priming Lien And Violates Local Rules

15. As it did in its Cash Collateral Motion, Debtor once again seeks to provide Rykor a superpriority lien on the proceeds from the anticipated sale of the Debtor's assets in violation of Section 364 of the Bankruptcy Code and MLBR 4001-2. The Bank objects to such priming financing.

16. Under Section 364 of the Bankruptcy Code, a debtor in possession is permitted to incur unsecured debt in the ordinary course of business provided that such debt is allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code. A debtor can only obtain debt secured by a senior or equal lien on property of the estate if the debtor cannot obtain credit otherwise, and the debtor has proven that the interest of the other creditor with a lien on the debtor's assets is adequately protected. Under MLBR 4001-2, among other provisions, a debtor is not permitted to create a lien senior or equal to any existing lien without the consent of the lienholder. MLBR 4001-2(c)(7). The Debtor does not assert or make any effort to meet its burden under either Section 364 of the Bankruptcy Code or MLBR 4001-2.

17. The Debtor's Bid Procedures Motion contravenes Section 364 because, under the guise of a termination fee, it seeks to give Rykor what amounts to a first priority security interest in the proceeds from the sale of the Debtor's assets. The Debtor intends to receive post-petition funding from Rykor that will be applied to pay the Debtor's post-petition payroll expenses. If the Debtor successfully sells all of its assets to Rykor as the Debtor intends, then the Debtor does not have to repay the post-petition amounts advanced by Rykor, presumably because such

amounts have been factored into the purchase price for the Debtor's assets. However, if Rykor is not the successful purchaser at the sale of the Debtor's assets, then the Debtor must repay to Rykor all post-petition payments from the proceeds of the sale. Given that the sale proceeds will likely be less than the amount of the Bank's secured claim, the practical effect of the repayment to Rykor is to prime the Bank's security interest by paying Rykor's claim first. Such a request does not comply with Section 364 and must be denied.

18. The Bank reserves all rights to supplement this Objection.

WHEREFORE, the Bank requests that the Court enter an order:

(1) Denying the Bid Procedures Motion; and

(2) Granting such other and further relief as the Court deems just and necessary.

**THE BANK OF CANTON**,

By its attorneys,

/s/ Jeffrey D. Ganz
Jeffrey D. Ganz, Esquire
Christopher M. Candon, Esquire
RIEMER & BRAUNSTEIN LLP
Three Center Plaza
Boston, Massachusetts 02108
jganz@riemerlaw.com
ccandon@riemerlaw.com
617-523-9000

Dated: November 11, 2011

# CERTIFICATE OF SERVICE

I, Jeffrey D. Ganz, hereby certify that on the 11th day of November 2011 I caused a copy of the foregoing *Objection of the Bank of Canton to Motion By Debtor For Approval of Bidding Procedures and Termination Fee Provision In Connection With Proposed Private Sale of Assets Free And Clear Of Liens, Claims And Interests* to be served electronically through the Court's e-filing systems.

/s/ Jeffrey D. Ganz
Jeffrey D. Ganz, Esquire