UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| LINDSAY LAMPASONA, LLC, | ) | Case No. 11-19747-JNF |
| | ) | |
| Debtor. | ) | |
| | ) | |

## RYKOR CONCRETE & CIVIL, INC.'S REQUEST FOR
## PAYMENT OF CHAPTER 11 ADMINISTRATIVE EXPENSE

Pursuant to 11 U.S.C. §§ 503(b)(1) and 507(a)(2), Rykor Concrete & Civil, Inc. ("**Rykor**") files this Request for Payment of Chapter 11 Administrative Expense (the "**Request**").

By way of summary, Lindsay Lampasona, LLC (the "**Debtor**") is indebted to Rykor for (a) payments owed to Rykor on account of post-petition services performed by Rykor, for which Rykor has not yet been paid any amount, (b) the overpayment of consideration by Rykor in connection with the sale of the Debtor's assets, and (c) the Debtor's breach of certain representations and warranties in connection with the sale of the Debtor's assets to Rykor.  In support of this Request, Rykor respectfully states as follows:

### Background

1.    On October 14, 2011 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

### A.    The MPO Project

2.    The Debtor and J. Derenzo Co. ("**Derenzo**") are parties to a certain subcontract agreement pursuant to which the Debtor agreed to provide certain concrete and construction

services in connection with the construction of a shopping center in Merrimack, New Hampshire (the "**MPO Project**").

3.       In October 2011, Rykor and the Debtor agreed that Rykor would perform certain work (the "**Foundation Work**") on behalf of the Debtor in connection with the MPO Project.

4.       Rykor began to perform work on behalf of the Debtor in connection with the MPO Project in late October 2011.  As of the date hereof, Rykor has completed the Foundation Work on behalf of the Debtor.

5.       Without Rykor's work on the MPO Project on behalf of the Debtor, the Debtor would not have completed the Foundation Work and would have been in default of its obligations to Derenzo.

**B.**       **The Sale**

6.       In September 2011, Rykor and the Debtor entered into an Asset Purchase Agreement (the "**APA**") pursuant to which Rykor agreed to purchase substantially all of the Debtor's assets in exchange for consideration in the amount of $448,000 (the "**Sale Price**").   In connection with the APA, Rykor paid to the Debtor a good faith deposit of $10,000 (the "**Deposit**"), which was to be credited against the Sale Price at closing.

7.       Following a hearing on December 29, 2011, the sale of the Debtor's assets to Rykor  pursuant to the APA was approved by this Court.   On February 6, 2012, this Court entered the *Amended Order Approving Debtor's Motion (A) To Authorize Debtor to Effectuate Purchase and Sale Agreement with Rykor Concrete & Civil Inc.; (B) To Authorize Sale of Assets By Private Sale Free and Clear of Liens, Claims and Interests; (C) To Authorize the Assumption and Assignment of Executory Contracts; and (D) For Related Relief* (the "**Sale Order**").

2

8.      At the closing of the sale, Rykor was supposed to pay to the Debtor an amount equal to the Sale Price less the Deposit.  However, Rykor inadvertently paid to the Debtor the full amount of the Sale Price.  Despite repeated requests by Rykor, the Deposit has not yet been returned.

**C**.      **The Vehicles**

9.      Among the assets Rykor purchased from the Debtor were various vehicles, including a 2000 Ford F350 (VIN# 1FTSW30LXYEC80690), a 2002 Ford F250 (VIN# 1FDNF20L92ED65169), and a 2004 GMC Savannah (VIN# 1GTGG25V64120631) and a snow plow (collectively, the "**Vehicles**").  Pursuant to the APA, the Debtor represented and warranted to Rykor that it was "sole owner" of the Vehicles and, upon entry of the Sale Order, would transfer the Vehicles to Rykor "free and clear of any and all mortgages, pledges, liens, security interest, lease, charge, encumbrance, objection, claim or joint ownership."

10.      Notwithstanding the Debtor's express representations and warranties to Rykor, in February 2012, the Vehicles were seized by the Norfolk County Sherriff, apparently based upon a judgment against an affiliate of the Debtor obtained by Chicopee Concrete Corporation ("**Chicopee**").

11.      On April 6, 2012, the Debtor and Chicopee submitted to this Court for approval a stipulation, pursuant to which Chicopee agreed to release any claim in or to the Vehicles and to pay any storage costs or other expenses due to the Norfolk County Sherriff in connection with the Vehicles.  The stipulation between the Debtor and Chicopee was approved by this Court on May 1, 2012.  Notwithstanding the stipulation, however, as of the date hereof – more than three months after the Vehicles were wrongfully seized – he Vehicles have yet to be returned to Rykor.

## Rykor's Administrative Expense Claim

12.     Rykor's administrative expense claim has three components:  (a) the amounts Rykor is owed for the Foundation Work, (b) the return of the $10,000 Deposit, and (c) compensation due to Rykor for the loss of the use of the Vehicles (and, if not soon returned to Rykor, the cost of the Vehicles themselves).

13.     Rykor completed the Foundation Work associated with the MPO Project on behalf of the Debtor, incurring significant labor costs.  For its work in connection with the MPO Project, Rykor believes that it is owed payment in the gross amount of approximately $347,000.

14.     The Debtor asserts, and Rykor acknowledges, that the Debtor may have certain setoff rights with respect to the amount owed to Rykor.  Following extensive discussions with the Debtor, Rykor and the Debtor reached agreement on the net amount payable by the Debtor to Rykor on account of the Foundation Work.  However, due to the Debtor's ongoing dispute with Derenzo, the Debtor and Rykor have not been able to finalize a settlement.[1]

15.     As of the date hereof,  Rykor has not been paid *any* amount for its work on the MPO Project.  The Debtor's failure to pay Rykor for worked performed over the past six months has created significant hardships for Rykor.

16.     At the time of the Sale hearing Rykor raised the issue of its unpaid administrative expense claim for the Foundation Work.  In light of such asserted claim, this Court ordered that the Debtor retain at least $330,000 of the Sale proceeds in the Bankruptcy estate until further order of the Court on notice to Rykor.

---

[1] Derenzo has stated, both in pleadings and at hearings before this Court, that prior to January 2012, Derenzo was unaware that Rykor was performing the Foundation Work.  These statements strain credibility.  First, it would have been patently obvious to Derenzo employees on the site of the MPO Project that Rykor employees were performing Foundation Work, using Rykor-owned equipment.  Second, Derenzo employees corresponded with Rykor employees regarding various aspects of the Foundation Work that Rykor was performing.  For example, attached hereto as Exhibit A is a copy of an e-mail exchange that took place on *November 22, 2011* between Michael McCarthy, a Derenzo employee, and PJ Lampasona, a Rykor employee, regarding certain aspects of the Foundation Work that required correction.

17.    The Debtor has not disputed its obligation to return the $10,000 Deposit to Rykor. Nonetheless, as of the date hereof, the Deposit has not yet been returned to Rykor.

18.    As of the date hereof, Rykor has been without the use of the Vehicles for three months.    Rykor paid good consideration for the Vehicles, and relied on the Debtor's representations that it had the ability to transfer to Rykor good title to the Vehicles.    Even if the Vehicles are soon returned to Rykor, Rykor has suffered damages due to its inability to use the Vehicles over the course of the past three months.

19.    Together, Sections 507(a) and 503(b) of the Bankruptcy Code "afford first priority to administrative expenses 'to encourage the provision of goods and services to the estate, and to compensate those who expend new resources attempting to rehabilitate the estate.'" Bonapfel v. Nalley Motor Trucks (In re Carpet Ctr. Leasing Co.), 991 F.2d 682, 685 (11th Cir. 1993) (internal citation omitted); Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st Cir. 1976) (noting purpose of similar provisions under the Bankruptcy Act was to "facilitat[e] the rehabilitation of insolvent businesses").    Preservation of the estate includes the protection of the assets of the estate.    See Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.), 954 F.2d 1, 5 (1st Cir. 1992) (internal citations omitted).

20.    There can be no doubt that Rykor provided services and consideration that were of significant benefit to the Debtor's estate.    Were it not for Rykor's work in completing the Foundation Work, the Debtor (and, for that matter, Derenzo) could have faced significant costs relating to the delayed completion of the MPO Project.    Rykor's services directly and substantially benefitted the Debtor's estate.

21.    Moreover, Rykor provided valuable consideration for the Vehicles in reliance upon the Debtor's representations.    It is clear that a Debtor's breach of a post-petition contract

gives rise to an administrative expense for the damages flowing from such breach.  See, e.g., In re Finevest Foods, Inc., 159 B.R. 972, 980 (Bankr. M.D. Fla. 1993) (finding purchaser of substantially all of the debtor's assets entitled to administrative claim for damages incurred as a result of debtor's breach of warranty in asset purchase agreement); IML Freight Props., Inc. v. Interstate Rental of Utah, Inc., 37 B.R. 556, 559 (Bankr. D. Utah 1984) (concluding that damages arising out of debtor's breach of post-petition agreement are treated as an administrative expense); In re Merry-Go-Round Enters., Inc., 180 F.3d 149, 155 (4th. Cir. 1999) (finding that damages arising out of debtor's breach of lease entered into post-petition are entitled to administrative priority).

22.    Rykor reserves all of its rights and remedies under applicable law against the Debtor and any other party with respect to this matter.

5144303v1

WHEREFORE, Rykor requests that the Court (a) grant Rykor an allowed administrative expense claim equal in an amount equal to the payment owed to Rykor on account of the Foundation Work, the damages suffered by Rykor in connection with its loss of use (and possibly, its permanent loss of) the Vehicles, and the Deposit,  (b) direct the Debtor to use the Sale proceeds held in its estate to satisfy, in part, Rykor's administrative claim, and (c) grant Rykor such other and further relief as this Court deems appropriate.

Dated:      May 18, 2012

Respectfully submitted:

RYKOR CONCRETE & CIVIL, INC.

By its attorneys,


/s/ Lisa E. Herrington
Paul D. Popeo  (BBO No. 567727)
Lisa E. Herrington, Esq. (BBO No. 655678)
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000
Email:  lherrington@choate.com

## **Exhibit A**

## PJ Lampasona

| | |
|---|---|
| **From:** | Mike McCarthy [MMcCarthy@JDerenzo.com] |
| **Sent:** | Tuesday, November 22, 2011 5:35 PM |
| **To:** | PJ Lampasona |
| **Cc:** | Eric Bray |
| **Subject:** | Re: WWM placement |

What about the coated rebar

J Derenzo Co
Mike McCarthy
1-617-212-4506
Sent from my iPhone

On Nov 22, 2011, at 5:21 PM, "PJ Lampasona" <pj@rykorconcrete.com> wrote:

> Its being done as we pour.  This picture is at the pour stop.  the truck ran out so we
put the form up and let the wire continue under the form.
>
> -----Original Message-----
> From: Mike McCarthy [mailto:MMcCarthy@JDerenzo.com]
> Sent: Tuesday, November 22, 2011 9:01 AM
> To: PJ Lampasona
> Cc: Eric Bray
> Subject: FW: WWM placement
>
> PJ
> Please take care of this now or we will be ripping this out its not
> suppose to be sitting on the gravel base Im sure you are pulling it up
> as you pour but by the pictures its not being done
>
> _____
> Michael J McCarthy Jr.
> Vice President
> Estimating/Project Management
> J Derenzo Co.
> 338 Howard Street
> Brockton, Mass 02301
> Direct Line 1-508-897-8028
> Direct Fax 1-508-897-8528
> Cell 1-617-212-4506
> mmccarthy@jderenzo.com
> www.jderenzo.com
>
>
>
>
> -----Original Message-----
> From: Borja del Nido [mailto:bdelnido@hardinconstruction.com]
> Sent: Tuesday, November 22, 2011 8:57 AM
> To: Eric Bray; Mike McCarthy
> Cc: Melvin Griffin
> Subject: FW: WWM placement
>
> Please get this rectified immediately. I am sure you will not want to be ripping out
concrete.
>
> BORJA DEL NIDO
>
> -----Original Message-----
> From: DLinscott@simon.com [mailto:DLinscott@simon.com]
> Sent: November 22, 2011 8:50 AM
> To: Borja del Nido

```
> Cc: maKroeger@simon.com
> Subject: WWM placement
>
>
> Borja/Melvin,
>
> Can we please resolve the ongoing issue with getting the WWM properly placed with-in the
concrete rather than laying on the subgrade.
>
> Thank you
>
> Dan L
>
>
> The information transmitted is intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged material. Any review,
retransmission, dissemination or other use of, or taking of any action in reliance upon,
this information by persons or entities other than the intended recipient is prohibited.
If you received this in error, please contact the sender and destroy any copies of this
document.
>
>
> --
> This message was scanned by ESVA and is believed to be clean.
>

--
This message was scanned by ESVA and is believed to be clean.
```

## PJ Lampasona

| | |
|---|---|
| **From:** | Mike McCarthy [MMcCarthy@JDerenzo.com] |
| **Sent:** | Tuesday, November 22, 2011 9:01 AM |
| **To:** | PJ Lampasona |
| **Cc:** | Eric Bray |
| **Subject:** | FW: WWM placement |

**Attachments:**     IMG00356-20111122-0841.jpg



IMG00356-2011112
2-0841.jpg (77...
                    PJ
Please take care of this now or we will be ripping this out its not suppose to be sitting
on the gravel base Im sure you are pulling it up as you pour but by the pictures its not
being done

_____
Michael J McCarthy Jr.
Vice President
Estimating/Project Management
J Derenzo Co.
338 Howard Street
Brockton, Mass 02302
Direct Line 1-508-897-8028
Direct Fax 1-508-897-8528
Cell 1-617-212-4506
mmccarthy@jderenzo.com
www.jderenzo.com




-----Original Message-----
From: Borja del Nido [mailto:bdelnido@hardinconstruction.com]
Sent: Tuesday, November 22, 2011 8:57 AM
To: Eric Bray; Mike McCarthy
Cc: Melvin Griffin
Subject: FW: WWM placement

Please get this rectified immediately. I am sure you will not want to be ripping out
concrete.

BORJA DEL NIDO

-----Original Message-----
From: DLinscott@simon.com [mailto:DLinscott@simon.com]
Sent: November 22, 2011 8:50 AM
To: Borja del Nido
Cc: maKroeger@simon.com
Subject: WWM placement


Borja/Melvin,

Can we please resolve the ongoing issue with getting the WWM properly placed with-in the
concrete rather than laying on the subgrade.

Thank you

Dan L

The information transmitted is intended only for the person or entity to which it is
addressed and may contain confidential and/or privileged material. Any review,
retransmission, dissemination or other use of, or taking of any action in reliance upon,
this information by persons or entities other than the intended recipient is prohibited.
If you received this in error, please contact the sender and destroy any copies of this
document.

--
This message was scanned by ESVA and is believed to be clean.