UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| LINDSAY LAMPASONA, LLC, | ) | Case No. 11-19747-JNF |
| Debtor. | ) | |

**MOTION OF RYKOR CONCRETE & CIVIL, INC. TO ENFORCE SALE ORDER**

Rykor Concrete & Civil, Inc. ("Rykor") by and through its undersigned counsel, hereby moves for an order enforcing this Court's *Amended Approving Debtor's Motion (A) to Authorize Debtor to Effectuate Purchase and Sale Agreement With Rykor Concrete & Civil Inc.; (B) To Authorize Sale of Assets by Private Sale Free and Clear of Liens, Claims and Interests; (C) To Authorize the Assumption and Assignment of Executory Contracts; and (D) For Related Relief* (the "Sale Order") [Docket No. 141].

In support of this motion (the "Motion"), Rykor respectfully represents as follows:

**JURISDICTION**

1.	The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  In addition, the Court specifically retained jurisdiction to enforce the Sale Order in the order itself.  See Sale Order at ¶ 10. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105 and 363 of the Bankruptcy Code.

## BACKGROUND

A. **The Sale of the Debtor's Assets to Rykor**

2. Rykor, a Delaware corporation with its headquarters in Norfolk, Massachusetts, was formed in August 2011 and is in the business of constructing concrete foundations, "hardscapes" (*e.g.*, paved sidewalks) and related trucking. Prior to the commencement of this case, debtor Lindsay Lampasona, LLC (the "Debtor") was in the business of constructing concrete foundations and walls.

3. On December 29, 2011, the Court approved the sale of substantially all of the Debtor's tangible assets to Rykor. On February 7, 2012, the Court entered the Sale Order, thereby approving the sale of substantially all of the Debtor's assets to Rykor, "free and clear of all Liens, Claims, and other interests." Sale Order at ¶5. The Sale Order further provided that:

> All persons and entities including, but not limited to, all debt security holders, equity security holders, federal, state, or local governmental, tax, environmental and regulatory authorities or agencies, lenders, trade and other creditors, holding any Lien, Claim or interest of any kind or nature whatsoever, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, now existing or hereafter arising, senior or subordinated, accrued, determined, determinable or otherwise, arising under or out of, in connection with, or in any way relating to, the Debtor or the operation of the Debtor's business prior to the transfer of the Assets, are hereby forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing any such Lien, Claim or interest against Rykor, the Assets and/or any other assets or operations of Rykor.

Sale Order, ¶ 6.

4. The sale of the Debtor's assets to Rykor closed on December 30, 2011 (the "Closing Date"). Since the Closing Date, Rykor has continued its operations in the

Commonwealth of Massachusetts using the assets that it owned prior to the Sale as well as the assets that it purchased from the Debtor.

5. Rykor's operations are materially distinct from the Debtor's business. Rykor is managed by its President, John C. Kelly, and its General Manager, Bruno Rodrigues, neither of whom were employed by the Debtor. Rykor performs sitework and trucking services, neither of which were services performed by the Debtor. On information and belief, prior to the Petition Date, the Debtor had approximately 68 employees. Rykor currently has 95 employees, of which approximately 29 formerly were employees of the Debtor. Certain of Rykor's employees are union members, while the Debtor's employees were not union members.

### B. State Unemployment Insurance Obligations

6. The Commonwealth of Massachusetts requires most employers to contribute to an unemployment insurance fund that provides a source of payment for unemployment benefits to which workers may become entitled pursuant to the relevant statutory scheme. See generally, M.G.L. c. 151A (hereinafter, "Chapter 151A").

7. The extent of an employer's unemployment insurance contribution (its "Contribution Rate") is based on an experience rating assigned to it (an "Experience Rating"), which is determined in accordance with the statute and is generally intended to be proportional to the amount of unemployment benefits paid to that employer's employees. In other words, employers with many employees and a significant history of former employees receiving unemployment benefits will typically be required to contribute to the unemployment insurance fund at a higher rate than new employers or employers with fewer employees and less claims activity. See L&CP Corp. v. Dir. of Division of Employment Security, 551 N.E.2d 1221, 1223 (Mass. App. Ct. 1990)("The legislative purpose [of Chapter 151A] was to design a system

3

whereby employers in the Commonwealth would finance unemployment benefits in amounts that generally reflect their experience with regard to benefits paid to their employees."). Contribution Rates are calculated as a percentage of an employer's payroll. See M.G.L. c. 151A, § 14.

8. On or about February 13, 2012, Rykor received a notice (the "February Notice") from the Massachusetts Department of Unemployment Assistance (the "Commonwealth") informing Rykor that, effective November 21, 2011, Rykor had been determined to be subject to Chapter 151A, by reason of its acquisition of substantially all of the assets of another business. A copy of the February Notice is attached hereto as Exhibit A. The February Notice also informed Rykor that:

> The account balance of the predecessor organization has been transferred to you. As the successor, you are liable for any past or future benefit charges attributable to the predecessor's account. Benefit charges are one factor used in the calculation of the employer contribution rate.

9. The February Notice also informed Rykor that the Commonwealth had determined that Rykor's Contribution Rate, effective as of October 1, 2011, was 7.870% (the "Disputed Rate"), which, upon information and belief, was the same rate that had been applied to the Debtor for 2011.

10. The Commonwealth applied the Disputed Rate to Rykor based on its determination that Rykor was the successor to the Debtor within the meaning of Section 14(n)(1) of Chapter 151A,[1] and should therefore be given the same Experience Rating as the

---

[1] Section 14(n) provides in pertinent part that "If the entire organization, trade or business of an employer, or substantially all the assets thereof, are transferred to another employer or employing unit, the transferee shall be considered a successor for the purpose of this section." M.G.L. c 151A, § 14(n)(1). The statute goes on to provide that "the successor shall take over and continue the employer's account, including its plus or minus balance and all other aspects of its experience under this chapter. The successor shall be secondarily liable for any amounts owed by the employer to the fund at the time of such transfer." M.G.L. c 151A, § 14(n)(2).

4

Debtor. Rykor subsequently informed the Commonwealth that it was not a successor to the Debtor, both as a matter of fact, based on the much more limited scale and nature of its business, and as a matter of law, based on the Sale Order. Rather, as a new employer, Rykor should be subject only to the much lower Contribution Rate applicable to new employers. See M.G.L. c. 151A, § 14(i)(2) (setting forth method of calculating rate of new employer, which rate shall be attributable to such employer for at least twelve (12) consecutive months).[2] The Commonwealth refused to revisit its conclusion to apply the 2011 Disputed Rate to Rykor.[3]

11.     Rykor should have been in 2011 and should in 2012 be subject to the Contribution Rate applicable to newly formed employers. Subjecting Rykor to the higher Disputed Rate would require it to make approximately $250,000 more in unemployment insurance contributions annually, which would be grossly disproportionate to the size of its workforce, and would fail to recognize that Rykor is a new company with little or no history of unemployment claims by its employees.

**RELIEF REQUESTED**

12.     Rykor seeks an order enforcing this Court's Sale Order by preventing the Commonwealth from assigning the Debtor's Contribution Rate or Experience Rating to Rykor, and requiring the Commonwealth to return any overpayments made by Rykor as a result of the application of the Disputed Rate.

---

[2] Upon information and belief, the Contribution Rate applicable to new employers is currently 2.89%.

[3] To the extent that this Court denies the relief requested herein, Rykor intends to seek reconsideration of the Commonwealth's decision pursuant to M.G.L. c. 151A, § 71, which provides that "the commissioner may reconsider a determination whenever he finds that . . . an error has occurred in connection therewith . . . ," as long as such redetermination is made within one year of the original determination. See National School Bus Service, Inc. v. Comm'r of Dep't of Employment & Training, 730 N.E.2d 342, 345 (Mass. App. Ct. 2000). However, delaying a determination on the merits of this issue, and requiring Rykor to contribute at the Disputed Rates (as defined below) in the meantime would materially and adversely impact Rykor's liquidity during its critical first year of operation.

5

13. The Sale Order precludes the Commonwealth from deeming Rykor to be a successor of the Debtor, for purposes of Chapter 151A or otherwise. It also prohibits the Commonwealth from attributing any characteristics of the Debtor to Rykor where such attribution would have the effect of making Rykor responsible for liabilities generated by the Debtor's activities. See Sale Order, ¶ 6 ("All persons and entities including, but not limited to, all … state, or local … tax … authorities or agencies … holding any Lien, Claim or interest of any kind or nature whatsoever … arising under or out of, in connection with, or in any way relating to, the Debtor or the operation of the Debtor's business prior to the transfer of the Assets, are hereby forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing any such Lien, Claim or interest against Rykor, the Assets and/or any other assets or operations of Rykor").

14. In applying the Disputed Rate to Rykor, however, the Commonwealth refuses to acknowledge the legal effect of the Sale Order. For one thing, the Commonwealth expressly has concluded that Rykor is a successor to the Debtor. Secondly, it requires Rykor to make unemployment insurance contributions at a rate that is based on the Debtor's operations and history, which were of a greater scope than Rykor's operations. The Commonwealth is calculating Rykor's potential proportional liability for unemployment benefits based on data attributable to and characteristics of the Debtor, not Rykor. In effect, the Commonwealth is making Rykor responsible for potential liabilities arising from the Debtor's operation of the Purchased Assets, in direct contravention of the Sale Order.

15. Chief Judge Bailey of this court recently granted another purchaser the same relief that Rykor requests herein. See In re PBBPC, Inc., No. 09-16725-FJB, 2012 Bankr. LEXIS 726 (Bankr. D. Mass. February 27, 2012) (hereinafter, "Biopure"). In Biopure, OPK Biotech, LLC

("OPK") purchased substantially all of the assets of debtor Biopure Corporation free and clear of all liens, claims and interests under Section 363 of the Bankruptcy Code, and subsequently began doing business in Massachusetts. After learning of OPK's acquisition of the assets, the Commonwealth informed OPK that it had determined that OPK was the successor employer to Biopure for purposes of Chapter 151A, and that Biopure's Contribution Rate for the prior year – 12.27% – would be transferred to OPK. Biopure, at *8.

16.     Believing that it was entitled to the far lower Contribution Rate of 2.89% applicable to new employers, OPK sought an order from the bankruptcy court (i) declaring that OPK had acquired Biopure's assets free and clear of Biopure's experience rating and Contribution Rate, (ii) requiring the Commonwealth to refund OPK's overpayments due to the excessive Contribution Rate attributed to it, and (iii) compelling the Commonwealth to assign OPK the Contribution Rate reserved for new employers. Biopure, at *9. The Commonwealth opposed OPK's motion, on, among other grounds, the basis that the Commonwealth's right to assign Biopure's experience rating to OPK (and to levy Biopure's Contribution Rate on OPK) was not an "interest" within the meaning of Section 363(f) of the Bankruptcy Code. Biopure, at *13.[4]

17.     Chief Judge Bailey agreed with OPK, holding that Section 363(f) of the Bankruptcy Code precluded the Commonwealth from assigning Biopure's experience rating and

---

[4] In Biopure, the Commonwealth also argued that the sale could not have been free and clear of any interest it was deemed to hold because it did not receive proper notice of the sale. Judge Bailey agreed that it had not been given proper notice, but held that the lack of notice was immaterial because the Commonwealth would have had no valid basis on which to oppose the sale even if it had received notice. Biopure, at * 16-17. Similarly, whether or not the Commonwealth received notice of the sale of the Debtor's assets to Rykor should have no bearing on the merits of Rykor's Motion.  It does appear, however, that the Commonwealth did in fact receive proper notice of the sale of the Debtor's assets to Rykor. As evidenced by the Certificate of Service filed by the Debtor with respect to the Debtor's *Notice of (A) Sale of Asets, (B) Deadline for Fliing Objections, (C) Deadline for Filng Counteroffers, and (D) Hearing Date,* [Docket No. 107], each of the Department of Revenue, Department of Unemployment Assistance and the Office of the Attorney General were notified of the sale.

7

Contribution Rate to OPK.  Biopure, at *20-26.  The court reasoned that the Commonwealth's right to levy a Contribution Rate on OPK was an "interest" within the meaning of Section 363 because the right "imposes a debtor's experience rating on the buyer precisely because, and only because, the buyer purchased assets of the bankruptcy estate."  Id. at *21.[5]  OPK had purchased the Biopure assets free and clear of that interest, prohibiting the Commonwealth from asserting it against OPK.

18.     Because Section 363(f) allowed OPK to purchase Biopure's assets free and clear of the Commonwealth's interest in levying Biopure's Contribution Rate on OPK, Chapter 151A was preempted to the extent that it deemed OPK a successor to Biopure.  Biopure, at *25 ("[W]here § 363(f) does apply, it preempts any state law to the contrary.  The sale order thus preempts the application of successor status to OPK under G.L. c. 151A, § 14.").[6]

19.     The Commonwealth has taken precisely the same action against Rykor that was prohibited in Biopure.  For the reasons articulated by Chief Judge Bailey, this Court should prohibit the Commonwealth from transferring the Debtor's Experience Rating and Contribution Rate to Rykor.

20.     Without an order from this Court enforcing the Sale Order, Rykor will be deprived of one of the primary advantages afforded by Section 363 of the Bankruptcy Code, the ability to obtain assets free and clear of other interests in those assets.  In spite of the comprehensive provisions of the Sale Order absolving Rykor of the consequences of the Debtor's financial difficulties, the Commonwealth is saddling Rykor with the Debtor's baggage

---

[5] In so holding, and in the absence of any controlling authority in the First Circuit, Chief Judge Bailey rejected the opposite conclusion reached by the Sixth Circuit Court of Appeals in Michigan Employment Security Commission v. Wolverine Radio Company, Inc. (In re Wolverine Radio Company, Inc.), 930 F. 2d 1132 (6th Cir. 1991).

[6] Judge Bailey declined to grant OPK's request to require the Commonwealth to assign to OPK the Contribution Rate applicable to all new employers, finding that it would exceed the Court's jurisdiction to dictate a particular rate to the Commonwealth, "provided the [Commonwealth's] determination of that issue does not run afoul of the Sale Order."  Biopure, at *26.

by refusing to acknowledge that Rykor is not the Debtor's successor as a matter of law. Doing so not only undermines the Court's Sale Order in this case, but threatens the viability of any asset sale in bankruptcy where a buyer seeks assurance that it will not be tainted by a debtor's past.

WHEREFORE, Rykor respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit B, (i) enforcing the Sale Order by precluding the Commonwealth from characterizing Rykor as a successor to the Debtor or from using the Debtor's Experience Rating, payroll or any other data generated in connection with the Debtor's operation of its business to determine Rykor's appropriate Contribution Rate pursuant to M.G.L. c. 151A, and (ii) granting Rykor such other and further relief as is just and appropriate under the circumstances.

May 31, 2012 RYKOR CONCRETE & CIVIL, INC.

By its attorneys,

/s/ Lisa E. Herrington_____
Paul D. Popeo (BBO No. 567727)
ppopeo@choate.com
Lisa E. Herrington, Esq. (BBO No. 655678)
lherrington@choate.com
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000