UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re:<br><br>    Lindsay Lampasona, LLC,<br><br>        Debtor | Chapter 7<br>Case No. 11-19747-JNF |

## CHAPTER 7 TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT WITH REMAINING ADVERSARY PROCEEDING DEFENDANTS

Lynne F. Riley, the duly appointed Chapter 7 trustee (the "Trustee") of the bankruptcy estate of the debtor Lindsay Lampasona, LLC (the "Debtor"), hereby moves this Court pursuant to Fed. R. Bankr. P. 9019 and MLBR 9019-1 for approval of the Settlement Agreement dated October 15, 2014 attached hereto as Exhibit A (the "Settlement Agreement" or "Settlement"). The Settlement Agreement is between the Trustee and the remaining defendants in pending adversary proceeding no. 13-01404-JNF (the "Adversary Proceeding"), including (i) defendants Patrick F. Lampasona, Jr. ("PJ Lampasona"), Devin T. Hartnell ("Hartnell"), S. Ernest Porter, Benjamin J. Stokdijk, Cory T. Bell, Kirby G. Putnam, and Laurence J. Smith (collectively, the "Insider Defendants"), (ii) defendant J.W. Lindsay Enterprises, Ltd. ("JWL"), and (iii) defendants John C. Kelly and Rykor Concrete & Civil, Inc. (together with the Insider Defendants and JWL, the "Remaining Defendants"). The Bank of Canton (the "Bank"), which has a pecuniary interest in the lawsuit and its settlement, and from whom the Remaining Defendants have required a release as a condition to their entering into the Settlement Agreement, is also a party to the Settlement Agreement. The Settlement Agreement provides for the Remaining Defendants to pay the Trustee $260,000 in settlement of all of her claims against the Remaining Defendants, except for certain direct fraudulent and preferential transfer claims against PJ

Lampasona that are not being settled.  If approved, the Settlement, combined with the Trustee's

agreement with estate professionals to limit their compensation, will permit a meaningful 10

percent distribution to unsecured creditors in a case that upon the Trustee's appointment

appeared to be administratively insolvent.

As grounds for this Motion, the Trustee states as follows:

**Background**

1.      The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code

on October 14, 2011.  The Debtor's Chapter 11 case was converted to Chapter 7 on May 21,

2012, whereupon the Trustee was appointed.

2.       On October 11, 2013, the Trustee filed a complaint commencing the

Adversary Proceeding, and on January 17, 2014, the Trustee filed an amended complaint (the

"Amended Complaint").

3.      The Amended Complaint asserted various claims against the Remaining

Defendants (all such claims, collectively, the "Asserted Claims"), including claims for breach

of fiduciary duty by the Insider Defendants, claims arising out of the Court-approved sale of

the Debtor's assets, and claims for avoidance of fraudulent and/or preferential transfers

received by PJ Lampasona, Hartnell, and JWL.  The Trustee's strongest claims were insider

preference claims against JWL ($41,937.77) and Hartnell ($15,708.43).  The Trustee asserted

that an additional $136,556.21 of purported loan repayments to JWL and Hartnell should be

avoided because the purported loans were in fact disguised equity contributions.  The

Trustee's sale-related claims asserted damages of $150,000, the amount of allegedly

undisclosed consideration to be paid to an insider.  The Trustee's breach of fiduciary duty

claims focused on the Insider Defendants' oversight of alleged constructively fraudulent

2

and/or preferential payments made by the Debtor (i) to PJ Lampasona, Hartnell, and JWL, (ii) to other Adversary Proceeding defendants who have already settled with the Trustee, and (iii) to judgment-proof insiders including Anthony Lampasona and Margaret Lampasona (each of whom has filed a Chapter 7 case).  The most significant breach of fiduciary duty claim was for permitting the Debtor's July 2008 payment of $252,000 to defendants Steven and Lynne Hetzel on account of their loan to PJ Lampasona and Anthony Lampasona (the "Hetzel Transfer") used to finance the business operations of Lampasona Concrete Corporation, the Lampasona-owned company that in June 2008 effectively merged operations with an affiliate of JWL to conduct business operations through the Debtor.

4.      Each of the Remaining Defendants other than PJ Lampasona answered the Amended Complaint to deny the Asserted Claims, and each maintained that it had valid defenses to the Asserted Claims.  JWL and the responding Insider Defendants demanded a jury trial, and their motion to withdraw the reference for such a trial was allowed.

5.      The Trustee and the Remaining Defendants (other than PJ Lampasona) have through counsel engaged in significant discovery regarding the Asserted Claims and the Remaining Defendants' claimed defenses, have traded their analyses of the factual and legal underpinnings of the claims and defenses, have argued the relative strengths and weaknesses of each side's positions, as well as the possible collection challenges the Trustee may face even if successful, and have engaged in lengthy negotiations toward a consensual resolution of their disputes.  These efforts have resulted in the Settlement Agreement.

## Summary of the Settlement[1]

6.     The Settlement Agreement provides for the Remaining Defendants to pay the Trustee $260,000 (the "Settlement Payment") in full and final satisfaction of all claims and causes of action, including the Asserted Claims, other than the Retained PJ Lampasona Claims (defined below).  The Insider Defendants' and their liability insurer will fund the major portion of the Settlement Payment ($235,000),[2] and defendants John C. Kelly and Rykor Concrete & Civil, Inc. together will fund the remaining $25,000.  The parties will exchange mutual releases (including of claims arising under Section 502(h) of the Bankruptcy Code), and the Adversary Proceeding will be deemed dismissed *with prejudice* except as to the Retained PJ Lampasona Claims.  The Settlement Agreement requires this Court's approval, with the Settlement Payment to be paid to the Trustee within three (3) business days after the approval order becomes a final, non-appealable order and not subject to any stay.  The Settlement Agreement contains other terms and conditions customary for documenting a compromise of the type involved here.

7.     The Remaining Defendants have conditioned their entry into the Settlement Agreement on the Bank's agreement to release any claims against the Remaining Defendants arising out of the Remaining Defendants' and the Bank's relationships with the Debtor.  Pursuant to the Stipulation between the Trustee and the Bank dated December 6, 2013 and approved by order of the Court entered December 16, 2014 [Docket No. 405], the Bank is entitled to twenty percent (20%) of the Trustee's net recovery from the Insider Defendants (the "Bank Share").  The Trustee has computed the Bank Share to be $18,000, the Bank has agreed to accept the Bank Share in such amount, and, in consideration of its receipt of the

---

[1] To the extent any inconsistency exists between the Settlement Agreement and any summary statements made in this motion, the Settlement Agreement shall govern.
[2] JWL funded not less than $50,000 of defense costs for the benefit of itself and the Insider Defendants and the insurance payment is considered to be made for the benefit of JWL as well as the Insider Defendants.

Bank Share, the Bank has agreed to exchange mutual releases with the Remaining Defendants

and to waive its remaining unsecured claim of more than $500,000. These agreements are

embodied in the Settlement Agreement, and are essential to permitting the anticipated 10

percent dividend to holders of allowed general unsecured claims.

8.    The Insider Defendants and their liability insurer funding the major portion

($235,000) of the Settlement Payment have conditioned such funding on the Trustee's release

of all insured claims against the Insider Defendants.  To ensure this essential funding of the

Settlement Agreement, the Trustee has agreed to release her claims against PJ Lampasona that

could give rise to a claim for insurance coverage, even though PJ Lampasona never defended

these claims.  But, the Trustee is not releasing her claims against PJ Lampasona asserted in

Counts X, XII, and XXIII of the Amended Complaint (for fraudulent transfers, preferences,

and unjust enrichment, respectively) solely with respect to the $44,676.86 of transfers made

directly to PJ Lampasona set forth in Exhibit G of the Amended Complaint (the "Retained PJ

Lampasona Claims").[3]

### The Settlement Benefits the Estate

9.    Upon receipt of the Settlement Payment, the Trustee will have generated

$927,434 of turnover and receivables collections, and litigation recoveries.[4] The Trustee

expects that, after payment of ordinary course estate expenses,[5] and after accounting for

payments made to the Bank of Canton both pursuant to the Stipulation approved September

12, 2012 [Docket No. 276] and for the Bank Share, she will hold approximately $502,720 for

payment of administrative expenses and allowed claims.  The Trustee estimates that:  her

---

[3] The Trustee may yet seek default judgment on these retained claims and pursue collection against PJ Lampasona.
[4] Inclusive of $2,000 of remaining installment payments under one settlement.
[5] Including bank technology and service fees, bond payments, adversary proceeding filing fees, subpoenas, etc.

commission will total approximately $49,600; unpaid Chapter 7 administrative expenses of professionals and the United States Trustee will total approximately $364,600;  unpaid Chapter 11 administrative expenses will total approximately $102,066; and (iv) allowed priority claims will total approximately $18,100.  General unsecured claims, which totaled $2,499,955.77 as filed, have been reduced to $570,737 as a result of (1) the Trustee's claims objections, (2) the Bank's waiver of its remaining general unsecured claim, and (3) other claims that have been waived in conjunction with various settlements.  To ensure a distribution to general unsecured creditors of approximately 10 percent, the Trustee and estate professionals have collectively agreed to reduce their commission and fees by approximately $92,000.  This voluntary reduction in permissible compensation from the estate, combined with the Bank's release of its unsecured claim that otherwise would total almost half of all general unsecured claims, will ensure a meaningful distribution to general unsecured creditors in the range of 10 percent of their allowed claims.

## Approval of the Settlement is Appropriate

10.    Compromises "are favored in bankruptcy," 9 Collier on Bankruptcy, ¶ 9019.01 at 9019-2 (15th ed. 2004), and have become a "normal part of the reorganization process."  Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 130 (1939), cited in Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); see also LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 212 F.3d 632, 635 (1st Cir.2000) (quoting Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 50 n. 5 (1st Cir.1998)); In re Martin, 91 F.3d 389, 393 (3rd Cir. 1996).  Settlements are favored because they serve to minimize litigation, provide a means for efficient resolution of disputes, and help to expedite the administration of the bankruptcy estate.  In re Genesis Health Ventures, Inc., 266

B.R. 591, 619 (Bankr. D. Del. 2001) (internal citations omitted).  A compromise should be

approved where it is fair, equitable, and in the best interest of the estate and creditors.  See

Jeremiah v. Richardson, 148 F.3d 17, 23 (1st Cir. 1998) (citing Jeffrey v. Desmond, 70 F.3d 183,

185 (1st Cir. 1995)).

11.     In evaluating the proposed compromise embodied in the Settlement Agreement, it

is appropriate for this Court to canvass the issues and determine whether the settlement falls

below the lowest point in the range of reasonableness.  Healthco Int'l, 136 F.3d at 51 (quoting

Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir.1983)) (internal citations

omitted).  The court may consider, among other factors:

> (1) the probability of success were the claim to be litigated . . .
> measured against the more definitive, concrete and immediate
> benefits attending the proposed settlement . . . (2) a reasonable
> accommodation of the creditors' views regarding the proposed
> settlement; and (3) the experience and competence of the fiduciary
> proposing the settlement.

Id., 136 F.3d at 50.  The Court should give deference to the trustee's judgment, "provided that

the trustee can demonstrate that the proposed compromise falls within a 'range of

reasonableness.' "  In re Fibercore, Inc., 391 B. R. 647, 655 (Bankr. D. Mass. 2008) (citation

omitted).

12.     Based on her conduct of the litigation against the Remaining Defendants, the

Trustee believes that the most significant matters informing her decision to enter into the

Settlement include:  (i) the relatively minor role of the Insider Defendants other than Hartnell

and PJ Lampasona in conducting the Debtor's operations and financial affairs; (ii) the

Trustee's perception of greater culpability of Hartnell and PJ Lampasona (and non-defendant

Anthony Lampasona) for the Asserted Claims as compared to the other Remaining

Defendants, and the fact that Anthony Lampasona is judgment-proof and PJ Lampasona

appears to be judgment-proof, or nearly so; (iii) the possibility that the Trustee would be unable to demonstrate to a jury the Debtor's insolvency as to transfers made long before the bankruptcy filing, in particular the $252,000 Hetzel Transfer that occurred more than three years prepetition and prior to the 2008 financial crisis; (iv) the possibility that the breach of fiduciary duty claims regarding the Hetzel Transfer would be barred by a three-year statute of limitations, as the Insider Defendants have asserted; (v) the fact that the Trustee had already settled many of the avoidance claims underlying her breach of fiduciary duty claims against the Insider Defendants, and had credited asserted defenses in reaching such settlements; (vi) the uncertainty whether the Trustee would succeed in her effort to have insiders' purported loans to the Debtor recharacterized as equity; (vii) the difficulty of proving to a jury actual damages resulting from the Remaining Defendants' allegedly improper conduct of the Debtor's Court-approved sale of assets; (viii) the cost of litigation to date and the relatively limited upside of continuing to litigate in light of the required jury trial and attendant cost of continued litigation; (ix) the fact that JWL and the Insider Defendants other than PJ Lampasona and their liability insurer are resident in Canada, making collection of any judgment that might be obtained potentially complicated and expensive; and (x) the fact that the Bank—the Debtor's largest creditor—approves of the Settlement, and in joining the Settlement Agreement to obtain the Bank Share graciously has agreed to waive its remaining claim for the benefit of other creditors.

13.     Given these considerations, the Trustee believes that the Settlement Agreement reflects a fair resolution of the Asserted Claims, provides a certain benefit to the estate and creditors, and  avoids the risk that continued litigation of the Asserted Claims would not be cost-

effective unless the Trustee ultimately were to obtain judgment on most if not all of her claims, and collect on such judgment without further substantial expense or delay.

14.      The Trustee is a highly-qualified fiduciary with substantial experience in serving as trustee in bankruptcy cases and insolvency matters and in settling disputes.  The Settlement, reached through litigation and negotiations conducted by the Trustee and her experienced bankruptcy counsel, reflects the commercially reasonable exercise of the Trustee's business judgment and the prudent discharge of her duties as a fiduciary to the Debtor's creditors.  The Settlement is advantageous to, and in the best interests of, the Debtor's estate and its creditors.

### Notice

15.      In accordance with Fed. R. Bankr. P. 2002(a)(3) and (h), the Trustee is serving a copy of this Motion on all parties on the regular service list including all parties that have requested notice and service of pleadings in this case (the "Regular Service List"), and the Trustee will furnish notice of this Motion, and of any related hearing and/or objection deadline, upon (a) the Regular Service List, (b) the Office of the United States Trustee for this district, and (c) all parties on the mailing matrix maintained by the Court, including all creditors that have filed proofs of claim in this Chapter 7 case.  The Trustee submits that such notice is good and sufficient notice of the Settlement under the particular circumstances.

### Conclusion

16.      For the foregoing reasons, the Trustee respectfully submits that the Settlement Agreement is in the best interest of the Debtor's estate and its creditors, and requests that it be approved in its entirety through this Court's entry of an order substantially in the form of attached Exhibit B.

Dated:  October 28, 2014                    Lynne F. Riley, Chapter 7 Trustee

                                            By her attorneys


                                            /s/ A. Davis Whitesell
                                            A. Davis Whitesell BBO# 551462
                                            Casner & Edwards, LLP
                                            303 Congress Street
                                            Boston, MA 02210
                                            (617) 426-5900
                                            whitesell@casneredwards.com

## Exhibit A

**[Settlement Agreement]**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

| | |
|---|---|
| In re:<br>Lindsay Lampasona, LLC<br><div align=center>Debtor</div> | Chapter 7<br>Case No. 11-19747-JNF |
| Lynne F. Riley, Chapter 7 Trustee,<br><div align=center>Plaintiff</div><br>  v.<br><br>J.W. Lindsay Enterprises, Ltd., Patrick F.<br>Lampasona, Jr., Devin T. Hartnell, S. Ernest<br>Porter, Benjamin J. Stokdijk, Cory T. Bell,<br>Kirby G. Putnam, Laurence J. Smith, John C.<br>Kelly, Rykor Concrete & Civil, Inc.,<br>American Express Company, FIA Card<br>Services, N.A., Steven Hetzel, and Lynn<br>Hetzel,<br><br><div align=center>Defendants</div> | Adversary Proceeding<br>No. 13-01404 |

## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement entered into this 15th day of October, 2014 by and among (i)

plaintiff Lynne F. Riley, chapter 7 trustee for the bankruptcy estate of Lindsay Lampasona, LLC

(the "Plaintiff" or "Trustee"), (ii) defendants Patrick F. Lampasona, Jr. ("PJ Lampasona"), Devin

T. Hartnell, S. Ernest Porter, Benjamin J. Stokdijk, Cory T. Bell, Kirby G. Putnam, and Laurence

J. Smith (collectively, the "Insider Defendants"), (iii) defendant J.W. Lindsay Enterprises, Ltd.

("JWL"), (iv) defendants John C. Kelly and Rykor Concrete & Civil, Inc. (together with the

Insider Defendants and JWL, the "Remaining Defendants"), and (v) The Bank of Canton (the

"Bank"; the Plaintiff, the Remaining Defendants, and the Bank, collectively, the "Parties").

## Recitals

A.      On or about November 3, 2011 (the "Petition Date"), Lindsay Lampasona, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"), as case no. 11-19747 (the "Bankruptcy Case").

B.      The Trustee was duly appointed as trustee of the Debtor's bankruptcy estate (the "Estate") on May 21, 2012, when the Debtor's Bankruptcy Case was converted to a case under chapter 7 of the Bankruptcy Code.

C.      On or about October 11, 2013, the Plaintiff filed a Complaint against, among others, the Remaining Defendants, commencing the adversary proceeding styled as *Lynne F. Riley v. J.W. Lindsay Enterprises, Ltd., et al.*, adversary case no. 13-01404 (the "Adversary Proceeding").  On January 17, 2014, the Plaintiff filed an Amended Complaint (the "Amended Complaint").

D.      The Amended Complaint asserts various claims against the Remaining Defendants, including without limitation for avoidance of fraudulent and/or preferential transfers, breach of fiduciary duty, and participation in a collusive sale of the Debtor's assets (all such claims asserted against the Remaining Defendants in the Amended Complaint, collectively, the "Asserted Claims").

E.       The Remaining Defendants dispute and deny the Asserted Claims and the allegations made in respect thereof and maintain that they have valid defenses to the Asserted Claims.

F.      Pursuant to the Stipulation between the Trustee and the Bank dated December 6, 2013 and approved by order of the Court entered December 16, 2014 [Docket No. 405] (the "Bank Stipulation"), the Bank is entitled to twenty percent (20%) of the Trustee's net recovery from the Insider Defendants (the "Bank Share").  The Trustee has computed the Bank Share to be Eighteen Thousand Dollars ($18,000.00) and the Bank has agreed to accept the Bank Share in such amount.

G.      The Plaintiff and the Remaining Defendants have negotiated at arms' length and reached an agreement resolving the Asserted Claims.  The Remaining Defendants have conditioned their agreement to settle the Asserted Claims on the Bank's agreement to release any claims against the Remaining Defendants arising out of the Remaining Defendants' and the Bank's relationships with the Debtor.  In consideration of the Bank Share to be paid to the Bank from the net settlement recoveries from the Insider Defendants, the Bank is willing to exchange mutual releases with the Remaining Defendants.

## Agreement

NOW, THEREFORE, in consideration of the forgoing premises and the mutual covenants and promises set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Settlement Payment.  In settlement of the Asserted Claims, the Remaining Defendants shall pay to the Trustee (Lynne F. Riley, as chapter 7 trustee of Lindsay Lampasona, LLC) Two Hundred Sixty Thousand Dollars ($260,000.00) (the "Settlement Payment"), by not later than three (3) business days after the date on which an Order approving this Agreement that is entered by the Bankruptcy Court (the "Approval Order") becomes a final and non-appealable order (the "Final Order").  Upon her receipt of the Settlement Payment, the Trustee shall be

deemed to hold the Bank Share in trust for the Bank and shall promptly pay the Bank Share to the Bank pursuant to the Bank's payment directions provided to the Trustee.

2. <u>Settlement Approval</u>.  Plaintiff will promptly upon the Parties' execution of this Agreement, but in any event not later than October 31, 2014, prepare and file with the Bankruptcy Court a motion seeking approval of this Agreement pursuant to Fed. R. Bankr. P. 9019 (the "Approval Motion").  Pending the Plaintiff's submission and the Bankruptcy Court's consideration of the Approval Motion, this Agreement is binding upon the Bank and the Remaining Defendants, and upon entry of the Approval Order shall be binding upon Plaintiff.  If this Agreement is not approved by the Bankruptcy Court, then upon such non-approval this Agreement shall become null and void and the Parties' rights with respect to the Asserted Claims shall revert to their *status quo ante*.

3. <u>Plaintiff's Release of the Remaining Defendants</u>.  Effective upon receipt by the Trustee of the Settlement Payment, and subject to Section 6, Plaintiff, on behalf of herself and the Estate and all parties claiming by through and under it, releases, acquits, and forever discharges each of the Remaining Defendants and their respective insurers, successors, and assigns, from any and all claims, disputes, or liabilities, including, without limitation, those arising out of the Remaining Defendants' relationships and transactions with the Debtor and the Estate, whether or not known or unknown, asserted or unasserted, and further including, without limitation, the Asserted Claims and any other claims arising out of the events described in the Amended Complaint.

4. <u>Bank's Release of Estate and Remaining Defendants</u>.  Effective upon receipt by the Trustee of the Settlement Payment (including the Bank Share held in trust for the Bank pursuant to Section 1), and subject to Section 6, the Bank, for itself and on behalf of all entities

claiming by, through or under it, releases, acquits, and forever discharges each of the Remaining

Defendants and their respective insurers, successors, and assigns, from any and all claims,

disputes, or liabilities, including, without limitation, those arising out of the Bank's and the

Remaining Defendants' relationships and transactions with the Debtor and the Estate, whether or

not known or unknown, asserted or unasserted, and further including, without limitation, all of

the Asserted Claims and any other claims arising out of the events described in the Amended

Complaint.  Upon its receipt of the Bank Share, the Bank shall be deemed to have released any

remaining claims against the Estate and any right to receive any further payment or distribution

from the Estate, including but not limited to any claim(s) on account of any proofs of claim filed

in this case, which proofs of claim shall be deemed withdrawn upon entry of the Approval Order.

5.    <u>Remaining Defendants' Release of Estate and Bank</u>.  Effective upon receipt by

the Trustee of the Settlement Payment, and subject to Section 6, each of the Remaining

Defendants, for themselves and on behalf of all entities claiming by, through or under them,

releases, acquits, and forever discharges each of the Trustee and the Bank and their respective

insurers, successors, and assigns, from any and all claims, disputes, or liabilities, including,

without limitation, those arising out of the relationships of the Trustee, the Bank, and the

Remaining Defendants with the Debtor and the Estate, whether or not asserted, including without

limitation any claims arising out of the events described in the Amended Complaint and any

claims that could be asserted under 11 U.S.C. § 502(h).

6.    <u>No Release of Settlement or Independent Rights and Obligations</u>.  The provisions

of Sections 3, 4, and 5 shall not affect or operate to release (i) any Party's rights and obligations

under this Agreement, (ii) any rights or obligations arising out of an independent banking or

lending relationship between the Bank and any of John C. Kelly, Rykor Concrete & Civil, Inc. or

PJ Lampasona, and (iii) the Estate's claims asserted by the Trustee against PJ Lampasona in

Counts X, XII, and XXIII of the Amended Complaint (for fraudulent transfers, preferences, and

unjust enrichment, respectively) solely with respect to the $44,676.86 of transfers made directly

to PJ Lampasona set forth in Exhibit G of the Amended Complaint (the "Retained PJ Lampasona

Claims").

7.      <u>Disposition of Adversary Proceeding</u>.  This Agreement shall be deemed a

stipulation to dismiss the Adversary Proceeding, with prejudice, as to the Remaining Defendants

only (but not as to PJ Lampasona with respect to the Retained PJ Lampasona Claims), after the

entry of the Approval Order that becomes the Final Order and the Trustee's receipt of the

Settlement Payment. Nevertheless, the Parties or any Party may, after the Trustee's receipt of the

Settlement Payment, file and serve an appropriate stipulation or motion seeking dismissal with

prejudice of the Asserted Claims other than the Retained PJ Lampasona Claims.  For the

avoidance of doubt, this Agreement shall not affect the litigation of the Adversary Proceeding

against any named defendants in the Amended Complaint other than the Remaining Defendants,

and shall not operate as a dismissal of any claims asserted against any defendant other than the

Remaining Defendants.

8.      <u>No Assignment of Asserted Claims</u>.  Plaintiff represents and warrants that she has

made no assignment, and hereafter will make no assignment, of any claim, chose in action, right

of action, or any other right released pursuant to this Agreement.

9.      <u>No Admission of Facts or Liability</u>.  Each of the Parties acknowledges that this

Agreement embodies a compromise of the Asserted Claims, and that neither the Settlement

Payment to be made hereunder nor anything contained in this Agreement is intended as a

concession or admission of any fact or of any liability, nor of any wrongdoing on the part of any

Party or that any precedent has been set.  The recitals in this Agreement do not admit any fact or any liability, nor any wrongdoing or precedent and to the extent that there is any suggestion thereof it should be considered to be merely a contention by a Party.

10.    Attorneys' Fees.  Each Party shall bear its own attorneys' fees and costs relating to the Adversary Proceeding and this Agreement.

11.    Acknowledgements.  Each of the Parties represents and warrants that:  (i) such Party has been represented and advised by counsel with respect to this Agreement and all matters covered by it, (ii) such Party has read this Agreement and understands all of its provisions, and (iii) such Party has full authority to execute this Agreement (subject in the case of Plaintiff to entry of the Approval Order).

12.    Entire Agreement. This Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein, and this Agreement may not be altered, amended, or modified in any respect or particular whatsoever, except by a writing duly executed by the Parties.

13.    No Presumption. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the Party causing the document to be drafted.

14.    Governing Law.  This Agreement shall be governed by and construed in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and the laws of Massachusetts (which state law shall exclusively govern the scope and enforceability of the releases given herein), without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction.

15.    Original and Counterparts. This Agreement may be executed in counterparts, each of which shall be an original, so that all of which taken together shall constitute one and the same instrument. Signatures recorded or transmitted in electronic form (e.g., facsimile, PDF) shall be deemed effective as originals.

16.    Retention of Jurisdiction. The Bankruptcy Court shall retain and maintain jurisdiction over the construction and enforcement of the terms and performance of this Agreement.

**IN WITNESS WHEREOF**, the Parties have executed and delivered this Agreement as of the date and year first above written.

LYNNE F. RILEY, as Chapter 7 Trustee
for the Bankruptcy Estate of
Lindsay Lampasona, LLC,
and not individually


_____
Lynne F. Riley


[signatures continued on following page]


- 8 -

J.W. LINDSAY ENTERPRISES, LTD.

By: _____

Title: *President*

_____
Devin T. Hartnell

_____
S. Ernest Porter

RYKOR CONCRETE & CIVIL, INC.

_____
Benjamin J. Stokdijk

By: _____

Title: _____

_____
Cory T. Bell

THE BANK OF CANTON

_____
Kirby Putnam

By: _____

Title: _____

_____
Laurence J. Smith

_____
John C. Kelly

_____
Patrick F. Lampasona, Jr.

- 9 -

J.W. LINDSAY ENTERPRISES, LTD.

_____
Devin T. Hartnell

By:_____

Title:_____

_____
S. Ernest Porter

RYKOR CONCRETE & CIVIL, INC.

_____
Benjamin J. Stokdijk

By:_____

Title:_____

_____
Cory T. Bell

THE BANK OF CANTON

_____
Kirby Putnam

By:_____

Title:_____

_____
Laurence J. Smith

_____
John C. Kelly

_____
Patrick F. Lampasona, Jr.

- 9 -

J.W. LINDSAY ENTERPRISES, LTD.

By:_____

Title:_____

RYKOR CONCRETE & CIVIL, INC.

By:_____

Title:_____

THE BANK OF CANTON

By:_____

Title: SR VICE PRESIDENT

_____
Devin T. Hartnell

_____
S. Ernest Porter

_____
Benjamin J. Stokdijk

_____
Cory T. Bell

_____
Kirby Putnam

_____
Laurence J. Smith

_____
John C. Kelly

_____
Patrick F. Lampasona, Jr.

**<u>Exhibit B</u>**

**[Proposed Order]**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |
|---|---|
| In re:<br><br>    Lindsay Lampasona, LLC,<br><br>        Debtor | Chapter 7<br>Case No. 11-19747-JNF |

## ORDER APPROVING SETTLEMENT
## WITH REMAINING ADVERSARY PROCEEDING DEFENDANTS

Upon consideration of the Chapter 7 Trustee's Motion for Approval of Settlement With

Remaining Adversary Proceeding Defendants (the "Motion") filed by Lynne F. Riley, the duly

appointed Chapter 7 trustee (the "Trustee") of the bankruptcy estate of the debtor Lindsay

Lampasona, LLC (the "Debtor"); the Trustee having provided good and sufficient notice of the

Motion, and of the Settlement Agreement attached as Exhibit A to the Motion (the "Settlement"),

to creditors and other interested parties; and after due deliberation and sufficient cause appearing

therefor; it is hereby

**ORDERED**, that:

       1.     The Motion is granted in its entirety, and the Settlement Agreement is authorized

and approved in its entirety.

       2.     The Trustee is authorized and directed to perform her obligations under the

Settlement Agreement.

       3.     This Court retains jurisdiction to enforce this Order and to adjudicate any disputes

arising with respect to the Settlement Agreement.

Dated: November ___, 2014

                                        _____
                                        Honorable Joan N. Feeney
                                        United States Bankruptcy Judge

## CERTIFICATE OF SERVICE

I, A. Davis Whitesell, Esq., hereby certify that on October 28, 2014, I caused a copy of the foregoing **Chapter 7 Trustee's Motion For Approval Of Settlement With Remaining Adversary Proceeding Defendants** (together with the Proposed Order thereon) to be served (A) by email through the Court's ECF system to all entities that are registered users thereof in this Chapter 7 case as of the date hereof, and (B) by U.S. first class mail to the entities listed below.

American Express Bank FSB
c/o Becket and Lee LLP
POB 3001
Malvern, PA 19355-0701

Argus Management Corporation
Attn: Peter Sullivan
15 Keith Hill Road
Suite 100
Grafton, MA 01519

Commonwealth of Massachusetts, Dept. of Workforce Development
19 Staniford Street
Boston, MA 02114

Lisa E. Herrington
Choate, Hall & Stewart
Two International Place
Boston, MA 02110

Craig R. Jalbert
Verdolino & Lowey, P.C.
124 Washington Street
Foxborough, MA 02035

Andrea W. McCarthy, Esquire
Law Offices of Jerry C. Effren
25 West Union Street
Ashland, Massachusetts 01721

Murphy & King, P.C.
One Beacon Street
21st Floor
Boston, MA 02108

Dated:  October 28, 2014          /s/ A. Davis Whitesell
                                  A. Davis Whitesell (BBO#551462)
                                  whitesell@casneredwards.com